**DAEWOO ELECTRONICS CO., LTD. et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**Court No. 85–01–00140.**

United States Court of International Trade.

July 14, 1992.

Reid & Priest, Washington, D.C. (David A. Gantz, Andrea E. Migdal, Kevin Lara, of counsel) for plaintiffs Daewoo Electronics, Co., Ltd., Daewoo Electronics Corp. of America Inc. and the Daewoo Corp.

Aiken, Gump, Hauer & Feld, Washington, D.C. (Warren E. Connelly and Edith E. Scott of counsel) for plaintiff-intervenors Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.

Donovan Leisure, Rogovin, Huge & Schiller, Washington, D.C. (Michael P. House & R. Will Planert, of counsel) for plaintiff-intervenors Goldstar Co., Ltd. and Goldstar Electronics Intern., Inc.

Collier, Shannon, Rill & Scott, Washington, D.C. (Paul D. Cullen and Jeffrey S. Beckington of counsel) for defendant-intervenors the International Union of Electronic, Elec., Technical, Salaried and Machine Workers, AFL–CIO; Internl. Broth. of Elec. Workers; Independent Radionic Workers of America, and Indus. Union Dept., AFL–CIO.

Frederick L. Ikenson, P.C., Washington, D.C. (Frederick L. Ikenson, J. Eric Nissley and Larry Hampel of counsel) for plaintiff Zenith Electronics Corp.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, U.S. Dept. of Justice, Washington, D.C. (Velta A. Melnbrencis, Attorney) and Robert E. Nielsen, Attorney-advisor, Office of Chief Counsel for Import Admin., U.S. Dept. of Commerce, for defendant U.S.

## OPINION AND ORDER

WATSON, Senior Judge:

Following a second remand to the Department of Commerce and its redetermination, this action is now before the court on a motion by Zenith Electronics Corporation for final judgment. The motion is supported by the government and opposed by three groups of Korean litigants, Daewoo, Samsung, and Goldstar. The previous opinions in this case were *Daewoo Electronics Co., Ltd. v. United States*, 13 C.I.T. 253, 712 F.Supp. 931 (1989) and *Daewoo Electronics Co., Ltd. v. United States*, — C.I.T. ——, 760 F.Supp. 200 (1991).

The central issue in this motion for final judgment concerns the tax pass-through measurement for which the court set out guidelines in its second remand.

The tax pass-through measurement which remains at issue here is done for the purpose of determining to what extent the foreign market price is higher than the price in the United States due to the fact that it includes a tax imposed when the merchandise is sold in the country of exportation, but *not* imposed when it is exported. In order to eliminate the unfairness which would result from comparing a price which includes the tax to one which does not, and thus finding a dumping margin where one does not exist, the law requires an adjustment for taxes. Obviously, the greater the percentage of the commodity tax which is passed on to the consumer and which shows up in the price, the larger is the effect resulting from its removal from the equation comparing the price in the home market of the foreign producer and the price in the United States market.

In the remand opinion, the court disapproved the method by which Commerce found that the entire commodity tax was passed through to consumers. In brief, Commerce made certain assumptions about the nature of the demand curve for the products in the Korean market which were not tested against actual data. Commerce also aggregated the data of all Korean respondents for different types of television receivers, creating a database which did not accurately reflect the evidence in the record. Accordingly, the court remanded the action to Commerce "to perform the analysis on a disaggregated basis, to con-

sider alternative forms for demand curves, and explain the evidence from the data which justifies it choice of one form over others." At the conclusion of its opinion, the court ordered "that with respect to the measurement of tax pass-through, Commerce shall perform the measurements on a disaggregated basis for each respondent and for the different types of television receivers; and that Commerce shall consider alternative forms of demand curves and specify the evidence in the record which makes it chosen curve a superior representation of the facts with respect to demand in the home market."

The Korean litigants argue that the results of this latest remand proceeding are defective because Commerce did not comply with the full terms of the court's order. They further argue that Commerce did not specify the methodology which was to be used in measuring the pass-through when it placed a burden on the Korean litigants to use generally accepted econometric methods to calculate the pass-through. The Korean interests also claim that Commerce ultimately erred in using Professor Bradley's measure of pass-through (which had earlier been submitted by Zenith), as the best information available.

■ As to the first argument, the court is satisfied that Commerce complied with its obligations under the remand order by requiring the respondents to use generally accepted econometric methods. The failure of respondents to supply the information on which a more precise analysis could have been made, cannot be held against Commerce.

The court views econometrics as one of a number of alternative methodologies. Although it would obviously be easier for the respondents if Commerce specified the particular econometric technique which should be used, that is not a requirement of the court, nor would it be reasonable in the formative stages of administrative experience in this area.

■ The claim that Commerce improperly relied on the best information available and unlawfully rejected the information supplied by the Korean respondents re-

quires some background discussion. Commerce began its reconsideration on remand by requiring the respondents to provide pass-through measurements, utilizing any methodology which they wished to employ, and opened up the record for the receipt of new information. Zenith objected to the opening of the record. Thereafter, the government moved the court for an extension of time within which to complete the remand, asking for nine months if the record was to be reopened or four months if it was to remain closed. The court approved the second alternative. In the meantime, Commerce had corrected its first remand instructions by informing the respondents that in order to perform the tax pass-through measurement, they had to use generally accepted econometric methods and were not free to use any methodology at all. The three Korean respondents submitted individual pass-through analyses, all of which relied exclusively upon a report which had been prepared for them by their jointly retained consultant, Dr. Litan. With respect to the basic question of what demand curve functional form would best fit the underlying data in this case (linear, log-linear, or quadratic), the Litan report gave overwhelming support for the log-linear specification. That conclusion was based on the fact that Dr. Litan calculated certain statistics for several types of regressions run against each of the three functional forms in issue. According to Dr. Litan, the log-linear form, which is the one which conclusively dictates full pass-through in this case, produced the best results for 11 of the 12 models/producer combinations. Based on that conclusion, it was unnecessary for Dr. Litan to perform actual pass-through measurements and none were made.

Following the submission of the Litan Report, Zenith submitted comments by Professor Bradley which conclusively showed that Dr. Litan had erred in applying the formula for developing the statistics for the log-linear equation. A correct computation of those statistics actually provided corroboration that tax pass-through was less than 100%.

Thereafter, the Korean respondents submitted a corrected report from Dr. Litan. That correction was followed by another response from Professor Bradley. Commerce ultimately rejected the corrected Litan report on the ground that his chosen method was not adequately implemented. More specifically, Commerce noted that the Litan report should have employed a maximum likelihood test, a test that it considered necessary to implement the procedure finally being used by Dr. Litan to distinguish between functional forms.

The rejection of the Litan report, after a relatively generous allowance of an opportunity for its correction, left the record bare of any pass-through measurements other than those of Professor Bradley. At that point Commerce chose to invoke its authority to use the best information available to designate Professor Bradley's measurement as such information without relying directly upon Professor Bradley's underlying analysis as the one preferred by Commerce.

The Korean litigants argue that having rejected Dr. Litan's work, Commerce should have relied on the work of its own economists rather than moving to the measurements of Professor Bradley.

The court is of the opinion that the work done by Commerce's own economists does not amount to a measurement of pass-through, does not cure the defects found in the Litan report on which it is based, and would be insufficient to support a choice between linear and log-linear demand equations. The only conceivable support for using the work of Commerce's own economists is Table One of Technical Appendix Two to the second remand results. This shows only the outcome of a single manipulation of Dr. Litan's result and does not represent the outcome of a new set of estimations. The economists themselves indicate that their table does not provide any statistical tests which would allow one to choose between linear and log-linear demand equations. Second R.R. Public Doc. No. 71, Technical Appendix Two at 14.

What remains is the question of the legality of Commerce's use of Professor Bradley's results as the best information available. The court does not find this to be an improper use of the authority to rely on best information available. There can certainly come a point in an administrative proceeding when providing further opportunities for respondents to supply information has to be balanced with the need to reach a final result. The court does not find it necessary to discuss the flaws which Commerce itself professes to find in the Bradley measurement result. Even if the Bradley measurement results are flawed, this would not detract from their use as best information available.

The court notes that the use of best information available by the Commerce Department in its final results in this second remand led to a conclusion that from thirty-three percent to sixty-two percent of the Korean commodity taxes were passed-through by the Korean respondents and could therefore enter into the calculation of the dumping margin. It should be pointed out that this was not the harshest result which the agency could have reached. It would have been entirely within the power of the Commerce Department, in the absence of satisfactory information concerning the claimed commodity tax adjustment, to deny that claim in its entirety. In point of fact, the Unions argue that in the absence of a proper showing of entitlement by the Korean respondents to the claimed adjustment, no adjustment whatsoever should have been made. The unions argue that Commerce violated a fundamental tenet of administrative law by departing from the standard practice of requiring a demonstration of entitlement before granting an adjustment. The court does not find that such a rigorous standard applies in this area of the law. The Commerce Department has the authority to make adjustments to the extent warranted by the evidence in the record and they need not be made on an all or nothing basis.

■ Aside from the argument about the pass-through measurements, the Korean litigants argued that Commerce erred by not including U.S. resale profit in the tax basis of exported receivers. Goldstar also ar-

gues that Commerce erred by removing international movement costs from the tax basis of exported receivers.

The court finds that Commerce's use of the price for exportation as the tax basis for all exported receivers was correct. This conforms to the court's previously expressed opinion in this case that there is no evidence in the record to contradict the conclusion based on Korean law that the price for exportation at which the merchandise left the place of manufacture would have been the tax base if a tax was to be imposed on exportations. The price for exportation clearly does not include U.S. resale profit nor does it include the cost of international movement and U.S. importation, which are incurred after exportation. For this reason, the court approves the tax basis used for exported receivers in the second remand.

■ In its motion for final judgment, Zenith also asks this court to reverse its earlier decision in this case, which goes back three years, that a cap existed on the duty assessment rate which ultimately would be applied to "dumped" entries if estimated antidumping duties were deposited in the form of a bond. Zenith is correct in pointing out that a conflict exists between that opinion and the court's more recent decision in July of 1991 on that same issue. The later decision fully and clearly sets outs the court's current opinion that there is no cap on assessment rates if estimated duties are deposited in the form of a bond. In the interest of justice and in the interest of having this opinion accurately reflect the state of the law as it presently exists, the earlier decision in this case must be modified to conform to the decision in Slip Op. 91–66.

For the reasons given above, it is hereby ORDERED, ADJUDGED and DECREED that the second determination of the Department of Commerce on remand in this action, which is dated September 24, 1991, is upheld, and it is further

ORDERED, ADJUDGED and DE-CREED that no assessment rate cap may be applied in liquidating the subject entries unless the importer paid a cash deposit for an estimated antidumping duty. This is in accordance with the court's decision and holding on July 29, 1991 (Slip Op. 91–66) in *Zenith Electronic Corporation v. United States, Et. Al,* Court No. 87–01–00039, 770 F.Supp. 648, and it is further

ORDERED, ADJUDGED and DE-CREED that to the extent that the court's earlier decision herein on April 1989 (Slip Op. 89–42), 712 F.Supp. 931, on the subject of the assessment rate cap is inconsistent with the court's more recent decision on July 29, 1991 (Slip Op. 91–66) the decision in Slip Op. 89–42 is modified to conform to the decision in Slip Op. 91–66.